PIERCE, Justice,
dissenting:
¶23. Respectfully, I dissent from the majority’s decision to reverse the conviction and sentence and remand this case for a new trial. In my opinion, the record supports the trial court’s ruling that Tevin Benjamin knowingly, intelligently, and voluntarily waived his right to have counsel present during questioning after previously having invoked that right.
¶ 24. As noted by the majority, the United States Supreme Court held in Rhode Island v. Innis, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980):
[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term “interrogation” under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.
(Emphasis added.) After Benjamin first invoked his right to counsel, Officer Miller informed Benjamin that he was being charged with capital murder and would not be going to youth court, and he asked who was Benjamin’s attorney. In Gillett v. State, 56 So.3d 469, 486 (Miss.2010), we held that informing a suspect of the charges against him after the suspect had invoked his right to counsel did not constitute continued interrogation. Upon hearing he was being implicated in a capital murder, Benjamin asked Officer Miller where he would be spending the night, and Officer Miller told him, “here in jail.” Benjamin began denying that he knew anything about the murder, and Officer Miller responded, telling Benjamin that he would have to discuss that with his lawyer. Officer Miller then told Benjamin’s mother, “The only way that anything will change is if he request a, you know, request it. And uh, I can’t, I can’t pressure him into changing his tune about wanting a lawyer, you know, and that kind of stuff. So, if you want to speak to him for a few minutes then, you know, we’ll go from there.” The majority contends that this constituted one of a series of psychological ploys and/or compelling influences on the part of Officer Miller. Based on my review of the video-recorded interview, I can no more factually infer the use of psychological or compelling influence on Officer Miller’s part from this portion of the video, than if the video had instead-hypothetically-shown Officer Miller abruptly halting the proceeding and immediately escorting Benjamin’s mother out of the room, leaving fourteen-year old Benjamin alone to await the booking process. Further, I find nothing inherently coercive in the fact that Officer Miller told Benjamin’s mother what Benjamin would have to do if he wanted to talk after having asserted his right to counsel. This was an accurate statement by Officer Miller, for purposes of Innis, and Officer Miller made no promises or threats in conjunction with it.
¶ 25. Afterward, Benjamin and his mother spoke to one another alone. Benjamin told his mother what he later told *125 Officer Miller, that he was at the fair at the time of the murder. Benjamin’s mother did encourage Benjamin to talk, and she then asked Officer Miller what Benjamin would have to do to talk. Even though Officer Miller equivocated with his response, he nonetheless bluntly informed Benjamin and his mother that it was the police’s position that Benjamin was involved with the murder, and Officer Miller unequivocally told Benjamin and his mother that Benjamin was going to be detained.
¶ 26. Benjamin and his mother again spoke alone, and Benjamin thereafter said he wanted to talk. Officer Miller asked Benjamin if he wanted to talk without his lawyer present. Benjamin said he did. Again, Officer Miller informed Benjamin of his Miranda rights. Again, Benjamin confirmed he understood his rights and signed a written waiver. Then, before any questioning took place, the following occurred:
Benjamin: Can I say something right quick sir?
Miller: You can say anything you want to buddy, it’s your interview.
Benjamin: So uh, when we get done am I still gonna be getting locked up?
Miller: Well that has a lot to do with what you talk about and everything. Uh, that has a lot to do with that dude.
I can see how, by isolating this exchange in a vacuum, it could be interpreted as deceptive. But there is more. Officer Miller immediately qualified his response as follows:
Miller: But I’m going to tell you this right now, and I’m not here to be, nobody’s going to be mean to you, mistreat you, or nothing else, ok. But, I don’t want you wasting my time, and I’m not going to waste your time, ok.
Benjamin: Yes, sir.
Miller: I don’t want you to he to me or nothing else. We’ve already interviewed a bunch of boys that was involved in this thing. We know that you’re not the shooter, you know. We have no doubts that you’re not the shooter. But, you’re either going to have to tell your side of the story or we’re going to go with what everybody else is saying, ok. Tell me what happened last Thursday evening.
¶27. We cannot look at statements made by the police in a vacuum in determining whether interrogation occurred; rather, we must view them in light of the circumstances of the interaction between the suspect and the police on the occasion in question. Although Benjamin was fourteen years old at the time in question, Benjamin, as shown by the record, was not unfamiliar with how the system worked, having been exposed to it in the past. He requested his youth-court attorney at the outset of the interview. When Benjamin asked if he was going to be spending the night in jail, Officer Miller, as detailed above, truthfully informed Benjamin of the current state of the investigation. Prior to that, Officer Miller expressly informed Benjamin through the advice of rights form — which, again, Benjamin confirmed he understood — that Benjamin still had the right to stop answering questions at any time until he talked to a lawyer. Benjamin elected to proceed with the interview.
¶ 28. The record, based on my review of it, does not affirmatively show that Benjamin did not voluntarily and intelligently withdraw his previous request for counsel and waive his Miranda rights. Accordingly, I would affirm the trial court’s decision not to suppress Benjamin’s statement as well as Benjamin’s conviction and sentence.
RANDOLPH, P.J., JOINS THIS OPINION.